Slip Op. 15-39

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                         :
ZHEJIANG NATIVE PRODUCE &                :
ANIMAL BY-PRODUCTS IMPORT &              :
EXPORT CORP. et al.,                     :
                                         :
          Plaintiffs,                    :
                                         :
          v.                             :
                                         :
UNITED STATES,                           :     Before: Richard K. Eaton, Judge
                                         :
          Defendant,                     :     Court No. 02-00064
                                         :
          and                            :
                                         :
SIOUX HONEY ASSOCIATION and              :
AMERICAN HONEY PRODUCERS                 :
ASSOCIATION,                             :
                                         :
          Defendant-Intervenors.         :
_____  :

**<u>OPINION and ORDER</u>**

[Plaintiffs' motion for preliminary injunction is granted.]

Dated: April 27, 2015

*Bruce M. Mitchell*, *Ned H. Marshak*, and *Andrew T. Schutz*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, for plaintiffs.

*Michael J. Coursey* and *R. Alan Luberda*, Kelley Drye & Warren LLP, of Washington, D.C., for defendant-intervenors.

EATON, Judge: Before the court is the motion for a preliminary injunction of plaintiffs Zhejiang Native Produce & Animal By-Products Import & Export Corp., Kunshan Foreign Trade Co., China (Tushu) Super Food Import & Export Corp., High Hope International Group Jiangsu Foodstuffs Import & Export Corp., National Honey Packers & Dealers Association,

Alfred L. Wolff, Inc., C.M. Goettsche & Co., China Products North America, Inc., D.F.

International (USA) Inc., Evergreen Coyle Group Inc., Evergreen Produce Inc., Pure Sweet Honey

Farm Inc., and Sunland International Inc. ("plaintiffs"), seeking to enjoin liquidation of any

unliquidated entries subject to the antidumping duty order on honey from the People's Republic of

China ("PRC") until the final resolution of all appellate review proceedings in this action,[1] which

challenges certain aspects of the International Trade Commission's ("ITC") affirmative material

injury determination.[2]  *See* Partial Consent Mot. for Prelim. Inj. 1–2 (ECF Dkt. No. 36) ("Pls.'

Mot."); Honey From the PRC, 66 Fed. Reg. 63,670 (Dep't of Commerce Dec. 10, 2001) (notice of

amended final determination of sales at less than fair value and antidumping duty order).

Defendant, the United States, the party that will receive whatever duties are assessed at the close of

this litigation, consents to plaintiffs' motion.  *See* Pls.' Mot. 8.   Defendant-intervenors, Sioux

Honey Association and American Honey Producers Association ("defendant-intervenors"),

however, object to the issuance of a preliminary injunction and urge denial of the motion.   *See*

Def.-ints.' Opp'n to Pls.' Partial Consent Mot. for Prelim. Inj. 1–2 (ECF Dkt. No. 41) ("Def.-ints.'

Br.").   For the reasons that follow, the court grants plaintiffs' motion.

---

[1]        Although normally styled as a preliminary injunction, the relief sought by plaintiffs has both preliminary and more permanent aspects.   The asked for injunction is preliminary in the sense that it would maintain the status quo until the conclusion of this litigation.   *See* 19 U.S.C. § 1516a(c)(2).   It would be permanent, however, because "entries, the liquidation of which was enjoined[,] . . . shall be liquidated in accordance with the final court decision in the action."   *See* 19 U.S.C. § 1516a(e)(2).   Thus, the injunction sought here would serve as a source of relief if, after the close of the litigation, the United States Customs and Border Protection Agency liquidated the entries at a rate other than that determined by the "final court decision."

[2]        Plaintiffs seek to enjoin liquidation of all entries subject to the antidumping duty order that were entered on or after May 11, 2001.   Partial Consent Mot. for Prelim. Inj. 1–2 (ECF Dkt. No. 36).

## BACKGROUND

In August 2000, the suspension agreement for the less-than-fair-value ("LTFV")

investigation of honey from the PRC expired, and the United States Department of Commerce

("Commerce" or the "Department") and the ITC resumed its previously suspended investigations.[3]

*See* Termination of Suspended Antidumping Duty Investigation on Honey From the PRC, 65 Fed.

Reg. 46,426, 46,426 (Dep't of Commerce July 28, 2000); *Zhejiang Native Produce & Animal*

*By-Products Imp. & Exp. Corp. v. United States*, 27 CIT 1827, 1828–31 (2003).   On December

10, 2001, as a result of the affirmative findings resulting from the ITC's investigation, and

following its own investigation and resulting determination of sales at LTFV, the Department

issued an antidumping duty order on honey from the PRC.   *See* Honey From the PRC, 66 Fed.

Reg. at 63,670–72.   The antidumping duty order set rates ranging between of 25.88 percent and

183.80 percent on plaintiffs' subject merchandise.   *See* Honey From the PRC, 66 Fed. Reg. at

63,672.   Plaintiffs separately appealed the Department's final LTFV determination and the ITC's

final affirmative injury determination.   On May 16, 2002, this case was stayed, pending the final

disposition of *Nippon Steel Corp. v. United States International Trade Commission*, Court No.

01-00103.   Order to Stay Further Proceedings (ECF Dkt. No. 25).   On January 30, 2008,

following the final decision in *Nippon Steel* and the lifting of the stay, the court subsequently

stayed the action pending the final disposition of *Zhejiang Native Produce & Animal By-Products*

*Import & Export Corp. v. United States*, Court No. 02-00057, which was plaintiffs' appeal

---

[3]     The investigation had been commenced on May 1, 1994 and notice of the
suspension of the LTFV investigation, as a result of the suspension agreement entered into by
Commerce, had been published on August 16, 1995.   *See* Honey From the PRC, 60 Fed. Reg.
42,521, 42,522 (Dep't of Commerce Aug. 16, 1995) (suspension of investigation).

challenging Commerce's LTFV determination regarding imports of honey from the PRC.   *See*

Order (ECF Dkt. No. 27).

        In court number 02-00057 (the LTFV case), plaintiffs, with the consent of all parties,

obtained a preliminary injunction on March 10, 2003, enjoining liquidation of entries of honey

from the PRC that were imported by plaintiffs into the United States and that were subject to the

antidumping duty order.   *See* Order, *Zhejiang*, Ct. No. 02-00057, ECF Dkt. No. 36.   On August

26, 2004, the *Zhejiang* Court issued its ruling in court number 02-00057, sustaining the

Department's final results of redetermination, thereby extinguishing the preliminary injunction.

*See Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States*, 28 CIT

1427, 1437 (2004), *rev'd and remanded*, 432 F.3d 1363 (Fed. Cir. 2005).   Thereafter, plaintiffs

obtained a second preliminary injunction, enjoining liquidation of the subject merchandise,

pending their appeal in court number 02-00057 to the Federal Circuit.   *See* Order, *Zhejiang*, Ct.

No. 02-00057, ECF Dkt. No. 51.   On October 10, 2014, a final decision was issued by the Federal

Circuit in court number 02-00057 (the LTFV case), and a mandate was subsequently issued on

December 1, 2014, as a result of which the second preliminary injunction was lifted.   *See*

*Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States*, 580 F. App'x

906 (Fed. Cir. 2014); Mandate, *Zhejiang*, Ct. No. 02-00057, ECF Dkt. No. 135.   In addition,

because of the final disposition in court number 02-00057, the stay that had been issued in this

action, which challenges the ITC's final affirmative material injury determination, was also lifted.

Following plaintiffs' motion for a preliminary injunction in the now active ITC case, the court, on

its own motion, temporarily restrained the United States Customs and Border Protection Agency

from liquidating any unliquidated entries of subject merchandise until the court rendered its

decision on plaintiffs' motion.   *See* Order (ECF Dkt. No. 44).

## DISCUSSION

### I.   LEGAL FRAMEWORK

The purpose of a preliminary injunction is to keep the status quo while an action is

pending, and this Court and the Federal Circuit have observed that, "[i]n antidumping and

countervailing duty cases preliminary injunctions against liquidation have become almost

automatic due to the retrospective nature of U.S. trade remedies, the length of the judicial review

process, and the cruciality of unliquidated entries for judicial review."  *Wind Tower Trade Coal.*

*v. United States*, 741 F.3d 89, 95–96 (Fed. Cir. 2014) (alteration in original) (citations omitted)

(quoting *Wind Tower Trade Coal. v. United States*, 37 CIT __, __, 904 F. Supp. 2d 1349, 1352

(2013)) (internal quotation marks omitted).   "The purpose and effect of granting such an

injunction is to preserve the status quo during the pendency of the judicial proceedings in order to

ultimately provide parties any relief the court grants."  *Husteel Co. v. United States*, 38 CIT __,

__, 34 F. Supp. 3d 1355, 1358–59 (2014) (citing 19 U.S.C. § 1516a(e)(2); *Belgium v. United*

*States*, 452 F.3d 1289, 1297 (Fed. Cir. 2006)).

In deciding whether to grant a motion for a preliminary injunction and thus enjoin

liquidation, the court must consider the following factors: (1) whether the movant "is likely to

suffer irreparable harm in the absence of preliminary relief"; (2) whether the movant "is likely to

succeed on the merits"; (3) whether "the balance of equities tips in . . . favor" of the movant; and

(4) whether "an injunction is in the public interest."  *Wind Tower*, 741 F.3d at 95 (quoting *Winter*

*v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (internal quotation marks omitted).

This Court "has traditionally applied a 'sliding scale' approach to this determination, whereby no

single factor will be treated as necessarily dispositive, and the weakness of the showing on one

factor may be overcome by the strength of the showing on the others."  *Husteel*, 38 CIT at __, 34

F. Supp. 3d at 1359 (citing *Belgium*, 452 F.3d at 1292–93; *Corus Grp. PLC v. Bush*, 26 CIT 937,

942, 217 F. Supp. 2d 1347, 1353–54 (2002)); *see also Qingdao Taifa Grp. Co. v. United States*,

581 F.3d 1375, 1378 (Fed. Cir. 2009) ("A request for a preliminary injunction is evaluated in

accordance with a 'sliding scale' approach." (quoting *Kowalski v. Chicago Tribune Co.*, 854 F.2d

168, 170 (7th Cir. 1988)) (internal quotation marks omitted)).   Further, this Court has also

explained that, where, as here, "the irreparable harm factor tilts decidedly in favor of the movant,

the burden of showing likelihood of success on the merits is lessened."   *Husteel*, 38 CIT at __, 34

F. Supp. 3d at 1362 (citing *Qingdao*, 581 F.3d at 1378–79; *Belgium*, 452 F.3d at 1292–93).   In

like manner, the Federal Circuit has found that, "the more the balance of irreparable harm inclines

in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order

to get the injunction."   *Qingdao*, 581 F.3d at 1378–79 (quoting *Kowalski*, 854 F.2d at 170)

(internal quotation marks omitted).


## II.   TIMELINESS OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

As an initial matter, defendant-intervenors object to plaintiffs' motion for a preliminary

injunction on the grounds that it is untimely.   Def.-ints.' Br. 10.   The merchandise at issue was

entered on or after May 11, 2001, i.e., the date of publication of Commerce's preliminary LTFV

determination in the Federal Register, in which it found that critical circumstances existed with

respect to plaintiffs' imports of honey.   *See* Honey From the PRC, 66 Fed. Reg. 24,101, 24,107–

08 (Dep't of Commerce May 11, 2001) (notice of preliminary determination of sales at LTFV);

Pls.' Mot. 1–2.

The domestic producers maintain that, pursuant to USCIT Rule 56.2(a), a motion to enjoin

liquidation of entries must be filed within thirty days after service of the complaint.   Def.-ints.'

Br. 10.   Thus, for defendant-intervenors, because plaintiffs brought this lawsuit on February 8,

2002, they had until March 8, 2002 to seek a preliminary injunction to enjoin liquidation of the

entries at issue, thereby rendering their current application, made nearly thirteen years later,

untimely.   Def.-ints.' Br. 10.   They also argue that plaintiffs have failed to make a showing that

they are entitled to take advantage of the "good cause" exception to USCIT Rule 56.2(a), which

would forgive plaintiffs' delay in seeking to enjoin liquidation.   *See* Def.-ints.' Br. 11–12.

    The court is unconvinced by defendant-intervenors' arguments.   United States Court of

International Trade Rule 56.2(a) reads, in relevant part: "Any motion for a preliminary injunction

to enjoin the liquidation of entries that are the subject of the action must be filed by a party to the

action within 30 days after service of the complaint, *or at such later time, for good cause shown*."

USCIT R. 56.2(a) (2015) (emphasis added).   Although "[n]either this [C]ourt's rules nor case law

defines 'good cause' as it applies in Rule 56.2(a)," courts have found, in other contexts, the term to

generally mean, "in a nutshell, that good reason must exist and that relief must not unfairly

prejudice the opposing party or the interests of justice."   *Carpenter Tech. Corp. v. United States*,

31 CIT 1, 4, 469 F. Supp. 2d 1313, 1316 (2007) (quoting USCIT R. 56.2(a)); *Am. Honda Motor*

*Co. v. Richard Lundgren, Inc.*, 314 F.3d 17, 21 (1st Cir. 2002) (citing *New Hampshire v. Maine*,

532 U.S. 742, 750–51 (2001); *FDIC v. Kooyomjian*, 220 F.3d 10, 14 (1st Cir. 2000)); *see also*

*United States v. Gieswein*, 346 F. App'x 293, 297 (10th Cir. 2009) (citing *Chao v. Hotel Oasis,*

*Inc.*, 493 F.3d 26, 32 (1st Cir. 2007)).   Although the rule was adopted for the purpose of

"reduc[ing] costs and procedural delays in antidumping and countervailing litigation by

encouraging the early filing of motions for preliminary injunction," it cannot be said that this goal

overwhelms the primary purpose of a preliminary injunction in a trade case, which is to ensure that

a prevailing party obtains the full benefit of its victory by the proper assessment of duties.   *See*

*Laclede Steel Co. v. United States*, 20 CIT 712, 714, 928 F. Supp. 1182, 1185 (1996).

Here, it is clear that there is good cause to excuse plaintiffs' delay in seeking an injunction.

The *Zhejiang* Court enjoined liquidation of plaintiffs' entries at issue in this case as early as March

2003[4] in the related appeal of Commerce's LTFV determination.   *See* Order, *Zhejiang*, Ct. No.

02-00057, ECF Dkt. No. 36; Order, *Zhejiang*, Ct. No. 02-00057, ECF Dkt. No. 51.   It was not

until the Federal Circuit issued its mandate on October 10, 2014, following a final decision in

plaintiffs' challenge to Commerce's LTFV determination, that liquidation of the entries was no

longer enjoined and the merchandise became susceptible to liquidation.   In other words, it was not

until October 10, 2014 that plaintiffs had reason to make a motion for a preliminary injunction in

this ITC case, because the entries were enjoined from liquidation by means of the preliminary

injunctions that had previously been in place in court number 02-00057 (the LTFV case).

United States Court of International Trade Rule 56.2(a) is a rule of practice whose time

limit has not been adhered to strictly by this Court, and the court declines defendant-intervenors'

invitation to do so here.   Indeed, this Court has recognized that "Congress considered an

injunction against liquidation to be so significant to the judicial review of a determination in an

[unfair trade] proceeding that it expressly provided the opportunity for such an injunction in 19

U.S.C. § 1516a(c)(2)."   *Union Steel v. United States*, 33 CIT 614, 625, 617 F. Supp. 2d 1373,

1383 (2009).   Moreover, defendant-intervenors have not suggested that the grant of an injunction

at this point in the proceedings would be prejudicial or otherwise inequitable.   *See Husteel*, 38

---

[4]            Administrative suspension of liquidation of the subject merchandise had been in
effect since the publication of Commerce's preliminary determination of sales at LTFV.   *See Int'l
Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002) (citing 19 U.S.C. § 1673b(d)
(1998); 19 U.S.C. § 1673d(c)(1)(C) (1994)); *see also Tembec, Inc. v. United States*, 30 CIT 1519,
1525–26, 461 F. Supp. 2d 1355, 1361–62 (2006), *vacated on other grounds*, 31 CIT 241 (2007).

CIT at __, 34 F. Supp. 3d at 1361.   Given the unusual procedural history of this case and the

public policy that directs that entries should be liquidated at the lawful rate, the court finds that

plaintiffs' motion for a preliminary injunction was timely made for purposes of USCIT Rule

56.2(a).


**III.   STANDING**

     Defendant-intervenors make various claims that plaintiffs lack Article III standing to bring

suit, mostly centering on the idea that, because "thirteen years after this appeal was filed . . . some

of the named importer plaintiffs may no longer exist, [those importers] thus no longer have a

legally cognizable interest to seek an injunction on their own behalf."   Def.-ints.' Br. 6.

     Article III of the United States Constitution "only allows the federal courts to adjudicate

'Cases' and 'Controversies.'"   *Consumer Watchdog v. Wis. Alumni Research Found.*, 753 F.3d

1258, 1260 (Fed. Cir. 2014) (quoting U.S. CONST. art. III, § 2, cl. 1).   In order "[t]o establish

Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly

traceable to the challenged action; and redressable by a favorable ruling.'"   *Clapper v. Amnesty

Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S.

139, 149 (2010)).   "By particularized, [courts] mean that the injury must affect the plaintiff in a

personal and individual way."   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

     In their complaint, plaintiffs state that they are all either "exporters of [h]oney subject to

the ITC's final determination," "importers of honey subject to the antidumping duty order," or

"trade association[s,] a majority of whose members import merchandise subject to the

antidumping duty order."   Am. Compl. ¶ 3 (ECF Dkt. No. 20).   Plaintiffs also assert in their

complaint that they are all interested parties under 19 U.S.C. § 1677(9) because they were all

"parties to the proceeding that led to the determination challenged herein."   *See* Am. Compl. ¶ 3

(internal quotation marks omitted).   Other than speculation, in their brief, as to the current status

of particular plaintiffs, defendant-intervenors have offered no affidavits or other evidence tending

to substantiate their claims that plaintiffs lack Article III standing to sue.   Because there is nothing

on the record to support defendant-intervenors' claims, their arguments as to standing will not be

considered.

## IV.   PRELIMINARY INJUNCTION FACTORS

As noted, in order to obtain a preliminary injunction against liquidation, the movant (in this

case, plaintiffs) bears the burden of establishing that (1) it is likely to suffer irreparable harm unless

a preliminary injunction issues, (2) it is likely to succeed on the merits, (3) the balance of equities

tips in its favor, and (4) the issuance of a preliminary injunction is in the public interest.   *Wind*

*Tower*, 741 F.3d at 95 (citing *Winter*, 555 U.S. at 20).

### A.   Irreparable Harm

Plaintiffs insist that they will suffer irreparable injury should a preliminary injunction not

issue because "all of [their] entries may be liquidated with antidumping duties assessed," in which

case, in addition to "the economic loss occasioned by the liquidation," they will also be

"depriv[ed] of [their] statutory right to obtain meaningful judicial review."   *See* Pls.' Mot. 4, 5

(citation omitted).   In other words, according to plaintiffs, should their entries of subject

merchandise be "liquidated prior to the completion of judicial review and plaintiffs ultimately

prevail, [they] will be without a remedy to recover wrongfully paid antidumping duties."   Pls.'

Mot. 6.   For plaintiffs, then, should they succeed in having the antidumping duty order revoked by

this lawsuit, the liquidation of their entries with antidumping duties would constitute irreparable injury.

Defendant-intervenors assert that plaintiffs have failed to demonstrate that they will suffer irreparable injury absent the enjoinment of liquidation of the entries at issue "[b]ecause liquidation of the entries in question would not deprive [p]laintiffs of the relief they seek—revocation of the antidumping duty order—nor deprive the [c]ourt of a controversy on which to base jurisdiction . . . ." Def.-ints.' Br. 14. Defendant-intervenors thus argue that liquidation of the entries would still leave in place the primary purpose of plaintiffs' suit, i.e., a finding that the antidumping duty order was unlawfully imposed and to have the order revoked. *See* Def.-ints.' Letter Br. 2 (ECF Dkt. No. 49). Therefore, for the domestic producers, because liquidation of plaintiffs' entries would not moot all of their case, plaintiffs would not suffer irreparable harm upon liquidation.

While defendant-intervenors can find support in case law for the proposition that preliminary injunctions are not available to continue the administrative suspension of liquidation during a lawsuit contesting the final results of an investigation, as distinct from an administrative review, the most recent cases have held that, at least where, as here, the final results of the investigation were affirmative, an injunction may issue. *Compare Am. Spring Wire Corp. v. United States*, 7 CIT 2, 5–6, 578 F. Supp. 1405, 1407–08 (1984), *with Wind Tower*, 741 F.3d at 100, *Husteel*, 38 CIT at __, 34 F. Supp. 3d at 1359–62, 1363–64, *and Wind Tower*, 37 CIT at __, 904 F. Supp. 2d at 1358. Under the facts of this case, liquidation has been suspended from the publication in the Federal Register of the Department's preliminary determination in May 2001. *See* Honey From the PRC, 66 Fed. Reg. at 24,108. Without the temporary restraining order entered by the court in this case, plaintiffs' merchandise entered on or after May 11, 2001 would have become subject to liquidation on December 1, 2014 when the Federal Circuit issued its

mandate.    Should a preliminary injunction not issue at the expiration of the temporary restraining

order, plaintiffs' entries would be subject to liquidation at the rates ranging between 25.88 percent

and 183.80 percent.    *See* Honey From the PRC, 66 Fed. Reg. at 63,672.    Thereafter, if plaintiffs

win this case and the antidumping duty order is revoked, as to any liquidated entry it will be too

late.    That is, because the already liquidated entries cannot be reliquidated, the revocation of the

antidumping duty order as to those entries will have no effect.    Thus, plaintiffs are right that, with

respect to those entries, upon liquidation, they would lose their only remedy.    *See Zenith Radio*

*Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983) ("The statutory scheme has no

provision permitting reliquidation in this case or imposition of higher dumping duties after

liquidation if Zenith is successful on the merits.    Once liquidation occurs, a subsequent decision

by the trial court on the merits of Zenith's challenge can have no effect on the dumping duties

assessed on entries of television receivers during the '79–'80 review period.").

      The purpose of a preliminary injunction is to maintain the status quo while a case is

pending.    Here, because liquidation has been suspended since publication in the Federal Register

of the preliminary determinations, the status quo at the close of the investigations was that the

merchandise was preserved for liquidation at the lawful rate at the close of the administrative

proceedings.    The entry of the preliminary injunctions in court number 02-00057 (the LTFV case)

maintained that status quo up to the point where plaintiffs made the present motion.    Were the

merchandise to be liquidated prior to the close of this case, plaintiffs, should they prevail, would

indeed face the prospect of losing the only remedy they have with respect to those entries, i.e.,

liquidation at the lawful rate.    Thus, the more recent cases have found that a party can show the

irreparable harm needed to obtain a preliminary injunction once the final determination in an

investigation has been published and a lawsuit with respect to that final determination has

commenced.   "As in most cases before the court, the movants seeking injunctions against

liquidation will be protected from their judicial challenges being mooted, while there will be little,

if any, harm to the other parties by granting the injunctions."   *Husteel*, 38 CIT at __, 34 F. Supp.

3d at 1363.   Hence, while a victory for plaintiffs in this case would result in the revocation of the

antidumping duty order and therefore provide prospective relief, as to the liquidated entries,

without a preliminary injunction their case would be moot.   Based on the foregoing, then,

plaintiffs have shown that they face the prospect of irreparable injury in the absence of a

preliminary injunction.

Indeed, it is apparent that irreparable harm can be shown irrespective of whether the results

of an investigation are negative or affirmative, find sales at LTFV, or whether the injunction is

sought by foreign producers or exporters, or by domestic producers.   In each of these cases,

without injunctive relief, the parties face the prospect of losing the only remedy they have with

respect to merchandise liquidated prior to a court ruling.


## B.  Likelihood of Success on the Merits

Where, as here, plaintiffs have demonstrated that they will be irreparably harmed should a

preliminary injunction not issue, "it will ordinarily be sufficient that the movant has raised

'serious, substantial, difficult and doubtful' questions that are the proper subject of litigation."

*NMB Singapore Ltd. v. United States*, 24 CIT 1239, 1245, 120 F. Supp. 2d 1135, 1140 (2000)

(quoting *PPG Indus. v. United States*, 11 CIT 5, 8 (1987)) (citing *Floral Trade Council v. United

States*, 17 CIT 1022, 1023 (1993)).   Although defendant-intervenors have spent many pages

rehearsing their case in their brief, they have not shown, as they insist, that plaintiffs' case is

entirely without merit.   Indeed, there are substantial questions remaining as to the ITC's material

injury determination.   For instance, plaintiffs' claim that the ITC "failed to adequately consider

the effect of the suspension agreement on preventing or mitigating any alleged injury or threat of

injury to the domestic industry caused by subject imports from [the PRC]" must still be resolved

by the court.   Am. Compl. ¶ 20.   Therefore, plaintiffs have satisfied their burden of raising

serious questions in their lawsuit and this factor favors plaintiffs.


### C.  Balance of the Equities

Before granting a preliminary injunction, a court must "determine which party will suffer

the greatest adverse effects as a result of [its] grant or denial."   *Ugine-Savoie Imphy v. United*

*States*, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688 (2000).   Plaintiffs have shown that they will

suffer substantial hardship if the preliminary injunction is not granted, by demonstrating the

irreparable harm that could result if their entries are liquidated prior to the outcome of this case on

the merits.

Defendant-intervenors do not claim that they will be harmed by the issuance of a

preliminary injunction and it is difficult to see how they can be harmed by the imposition of the

lawful duties at the conclusion of this case.   Thus, the factor favors plaintiffs.


### D.  Public Interest

"It is well-settled that the public interest is served by 'ensuring that [Commerce] complies

with the law, and interprets and applies [the] international trade statutes uniformly and fairly.'"

*Int'l Bhd. of Elec. Workers v. United States*, 29 CIT 74, 84 (2005) (alterations in original) (quoting

*Ugine-Savoie*, 24 CIT at 1252, 121 F. Supp. 2d at 690).   Further, "the public interest is best served

when all parties can obtain effective judicial review."   *Id.* (citing *SKF USA Inc. v. United States*,

28 CIT 170, 176, 316 F. Supp. 2d 1322, 1329 (2004)).   This being the case, "[g]ranting

[p]laintiffs' motion for preliminary injunction will ensure judicial review of Commerce's

determination and will further the public interest of an accurate assessment of antidumping

duties."   *Int'l Bhd.*, 29 CIT at 85 (quoting *SKF*, 28 CIT at 176, 316 F. Supp. 2d at 1329) (internal

quotation marks omitted).

        Here, accurate antidumping duties will be assessed at the conclusion of this case.   Public

policy favors this result and disfavors the result urged by defendant-intervenors.   This is

evidenced by the administrative suspension of liquidation following publication in the Federal

Register of both the ITC's and Commerce's preliminary determinations, and the orders enjoining

liquidation that have been in force since the suspensions were lifted.   Were plaintiffs' entries to be

liquidated now, all of these safeguards against premature liquidation, safeguards that have been in

place since the publication of Commerce's preliminary determination, might be for naught

depending on the case's outcome.   Accordingly, this factor, too, supports plaintiffs' application.


**V.     POSTING OF SECURITY**

        Defendant-intervenors urge the court to require plaintiffs to post additional security or

demonstrate an ability to pay the duties owed should the court grant plaintiffs' motion to enjoin

liquidation of plaintiffs' unliquidated entries of honey.   Def.-ints.' Br. 27.   As previously noted,

defendant-intervenors maintain that some plaintiff importers are no longer in business.   *See*

Def.-ints.' Br. 28.   According to defendant-intervenors, "[b]ecause many of the administrative

review rates are higher than the original investigation rates, [the p]laintiff importers will pay

higher duties on the related entries upon liquidation if the appeal in this case fails."   Def.-ints.' Br.

28.   Thus, defendant-intervenors argue that, because "it is not clear that any of the [p]laintiff

importers have the ability or intention to pay the higher duties at assessment that are likely to come

with a loss for them in this case," yet "seek an injunction to preserve the financial benefit of a

victory, . . . they should be required to provide security or assurances that they have the ability and

[intention] to make good on their duty obligations should they lose this case."   *See* Def.-ints.' Br.

30.

 Defendant-intervenors' argument for requiring certain plaintiffs to post additional security

or demonstrate an ability to pay suffers from the same deficiency as their objection to the standing

of these same plaintiffs: defendant-intervenors have not offered sufficient proof, or indeed any

proof at all, that these plaintiff importers are no longer in business and will thus be unable to pay

any additional duties owed in the future.

 More importantly, defendant-intervenors have failed to show any harm to them that might

result from the entry of a preliminary injunction that would justify a demand for security.   United

States Court of International Trade Rule 65(c), which is modeled after the parallel Federal Rule of

Civil Procedure, states, in relevant part, that "[t]he court may issue a preliminary injunction or a

temporary restraining order only if the movant gives security in an amount that the court considers

proper *to pay the costs and damages sustained by any party found to have been wrongfully

enjoined or restrained*."   *See* USCIT R. 65(c) (2015) (emphasis added); *see also* FED. R. CIV. P.

65(c).   "The purpose of this security is to provide recoverable damages that arise from operation

of the injunction itself, not from damages occasioned by the underlying suit."   *Badger-Powhatan

v. United States*, 10 CIT 454, 457 n.4, 638 F. Supp. 344, 348 n.4 (1986) (citing *Lever Bros. Co. v.

Int'l Chem. Workers Union, Local 217*, 554 F.2d 115, 120 (4th Cir. 1976)).   Although, pursuant to

the rule, this Court has required the posting of security or a bond to indemnify the defendant should

it ultimately be determined that the defendant was wrongfully enjoined or restrained by the

preliminary injunction, Courts have construed the language "as the court deems proper" to mean that "the district court may dispense with security where there has been no proof of likelihood of harm to the party enjoined" by the injunction itself.   *Compare Hyundai Pipe Co. v. U.S. Dep't of Commerce*, 11 CIT 238, 245 (1987), *Timken Co. v. United States*, 6 CIT 76, 83–84, 569 F. Supp. 65, 71–73 (1983), *and Zenith Radio Corp. v. United States*, 2 CIT 8, 11, 518 F. Supp. 1347, 1350 (1981), *with Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) (citations omitted), *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991), *People ex rel. Van De Kamp v. Tahoe Reg'l Plan*, 766 F.2d 1319, 1325 (9th Cir. 1985), *Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 999–1001 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring); *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 141 (2d Cir. 2014) ("A wrongfully restrained defendant may recover against a [temporary restraining order] security 'to cover the costs and damages *incurred as a result of complying with a wrongful* [temporary restraining order].'   The Rule 65(c) security, however, 'is not security for the payment of damages on an ultimate judgment on the merits.'" (emphasis added) (citations omitted) (quoting *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 560 (2d Cir. 2011); *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 21 (1st Cir. 2007))); *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1339 (Fed. Cir. 2012) ("This bond requirement is designed to protect the enjoined party's interests in the event that future proceedings show the injunction issued wrongfully." (citing *MITE Corp.*, 457 U.S. at 649 (Stevens, J., concurring))); *Badger-Powhatan*, 10 CIT at 457 n.4, 638 F. Supp. at 348 n.4.

Here, in addition, to having failed to provide any proof that the plaintiff importers are no longer in business and thus will be unable to pay any additional duties owed in the future,

defendant-intervenors have not shown how the entry of the preliminary injunction itself can harm

them.   Thus, the court will not require the posting of security.


## CONCLUSION

Because plaintiffs have satisfied their burden of establishing that a preliminary injunction

enjoining the United States Customs and Border Protection Agency from liquidating its entries of

subject merchandise is proper, the court grants plaintiffs' motion for a preliminary injunction.

Accordingly, a preliminary injunction will be entered.

Dated:        April 27, 2015
              New York, New York


                                              _____/s/ Richard K. Eaton_____
                                                            Richard K. Eaton